son why the plaintiff should not construct such sidewalk. The statute authorized the city to build it at plaintiff's expense.

[2] It is said, however, that the assessment is void for the reason that it was not laid according to the lineal frontage. The assessment was levied upon the plaintiff's tracks in the terrace, Fourth, Erie, Wilkeson, Church, and Norton streets. This certainly was not making an assessment for a sidewalk in front of plaintiff's premises in the terrace according to the lineal frontage. Such assessment should only have been laid upon the premises in front of which the sidewalk was laid. But the assessment was not void for such error. It was a good assessment so far as the plaintiff's tracks in the terrace were concerned. It was void as to plaintiff's tracks in Fourth, Erie, Wilkeson, Church, and Norton streets. The assessment for the entire expense of the sidewalk from plaintiff's tracks in the terrace may be upheld and the assessment upon the property in the other streets vacated and set aside. Brennan v. City of Buffalo, 162 N. Y. 491, 57 N. E. 81.

Judgment is ordered dismissing plaintiff's complaint as to the property affected by the assessment, sale, redemption, and execution of deed in the terrace, and vacating the assessment and all subsequent proceedings as affecting the plaintiff's property in Fourth, Erie, Wilkeson, Church, and Norton streets, without costs to either party.

Let findings be prepared.

---

(75 Misc. Rep. 197.)

### TOWN OF QUEENSBURY v. HUDSON VALLEY RY. CO.

#### PEOPLE ex rel. BLACKBURN, Com'r of Highways, v. SAME.

(Supreme Court, Special Term, Warren County. January, 1912.)

1. STREET RAILROADS (§ 38*)—OPERATION—DUTY TO OPERATE.

   The rights of a street railway company to operate its lines over a truss bridge between two towns in two counties are subject to the obligations of the public authorities to improve the bridge according to public interest.

   [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 99–111; Dec. Dig. § 38.*]

2. STREET RAILROADS (§ 38*)—CONSTRUCTION AND MAINTENANCE—DUTIES OF RAILWAY COMPANY.

   A street railway company is not bound to construct or maintain a bridge over which its line extends, unless required to do so either by statute or its franchise.

   [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 99–111; Dec. Dig. § 38.*]

3. STREET RAILROADS (§ 38*)—CONSTRUCTION AND MAINTENANCE—REPAIR OF BRIDGE.

   Railroad Law (Laws 1890, c. 565) § 98, requiring every street surface railway company, so long as it shall operate its tracks in any street or highway, to keep in repair that portion of the street between its tracks and two feet outside the tracks, requires the company to keep the floor of a bridge joining two towns in two counties, over which its line extends, in a safe and proper condition for travel.

   [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 99–111; Dec. Dig. § 38.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. STREET RAILROADS (§ 38*)—CONSTRUCTION AND MAINTENANCE—STATUTORY PROVISION.**

Railroad Law (Laws 1890, c. 565) § 11, requiring every railroad corporation which shall build its road along any street or highway which the route shall intersect or touch to restore such street or highway to its former state, applies to street surface and electric roads as well as steam roads, but not to a line extending along the highway.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 99–111; Dec. Dig. § 38.*]

**5. STREET RAILROADS (§ 38*)—FRANCHISE—BRIDGES.**

Where the grant of a franchise to construct an electric street railway over a bridge required the grantee to strengthen the stringers to the amount necessary to carry the cars of the company and any other weight which might at the time be lawfully on the bridge, but made no provision that the company should pay any part of the cost of repairs or restoring, and prior to the grant the stringers were 8-inch steel beams weighing 17¼ pounds to the foot, and, after the grant, the company removed the stringers from the west side of the bridge, where it was about to construct its line, and substituted 12-inch stringers weighing 40 pounds to the foot, the company was obligated to put the stronger stringers, not only under the portion occupied by its tracks, but under the entire roadway wherever necessary, the roadway being one structure and sustained by cross-pieces running its entire width, and the cost of such stringers and repairs must be paid by the company, but the cost of other parts of the bridge restored must be paid by the town.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 99–111; Dec. Dig. § 38.*]

**6. WORDS AND PHRASES—"STRINGERS."**

The term "stringers," used in relation to a bridge, is used interchangeably with "joists," and does not include cross-pieces, or braces, or suspension rods running from the cross-pieces to the trusses, but only the longitudinal pieces running from end to end under the floor of the bridge.

**7. STREET RAILROADS (§ 38*)—CONTRACTS—CONSTRUCTION.**

A provision of a street railway franchise that the company should at its own expense maintain the westerly half of the roadway of a bridge, on which half of the roadway the tracks lay, created a continuing obligation.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 99–111; Dec. Dig. § 38.*]

Proceedings by the Town of Queensbury against the Hudson Valley Railway Company and by the People, on the relation of John Blackburn, Commissioner of Highways of the Town of Moreau, Saratoga County, against the same defendant, to determine liability for expense of repairing a bridge connecting the two towns. Decision and findings ordered.

Jenkins, Kellogg & Barker, for town of Queensbury.
Wm. S. Ostrander, for town of Moreau.
James McPhillips (Lewis E. Carr, of counsel), for defendant.

VAN KIRK, J. Separate proceedings had been instituted by the two plaintiffs herein against the defendant; but, under the stipulation set forth in full in the minutes, this matter comes on to be heard. The only question presented is whether or not the defendant railway company must pay in full the expenses of the repairs which have been made to the bridge over which the defendant's railroad is constructed and operated between the town of Moreau, in Saratoga county, and

the town of Queensbury, in Warren county. It is conceded that the defendant must pay a portion of the expenses.

The bridge in question was constructed in 1890, and was then sufficient for the traffic across it. In 1896 the highway commissioners of Queensbury and the highway commissioner of Moreau granted franchises to the Glens Falls, Sandy Hill & Ft. Edward Street Railroad Company across the said bridge. Under these franchises, the line was constructed and since has been operated. In or about 1901, by a merger of street surface railroads, the line of road and the franchises over said bridge became the property of this defendant. In 1905, it was claimed that repairs were necessary in order to strengthen the bridge. Under the direction of the state engineer, a civil engineer, Charles F. Stowell, examined the bridge and made his report, showing the conditions and the repairs necessary to be made. These repairs have been made, and it is the expense therefor above mentioned. The bridge is a truss bridge, resting on end piers or abutments. The floor of the bridge is suspended by rods running from the trusses down to cross-pieces upon which rest stringers or joists, running lengthwise of the bridge and upon which the floor is placed. The floor is 26 feet wide. On the westerly half are the railway tracks and on the easterly the driveway. The trusses are on either side of the floor. The sidewalks are outside the trusses. It is not claimed that, on account of any negligent or improper use of the bridge, any liability has been cast upon the defendant.

[1] The bridge is a part of the highway. The defendant is an electric street surface railroad; and, having procured its franchise to construct and operate its line over the said bridge or highway, it has the right to so maintain and operate it under the statute and the terms of the franchise. Its rights are held subject always to the right of the public authorities to improve the highway or bridge as the public interest requires. Matter of Deering, 93 N. Y. 361; People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684.

[2] But it is not obliged to construct or maintain the highway. That obligation rested upon the two towns and two counties adjoining the ends of the bridge, unless some part of said obligation is put upon the railway company, either by statute or by the contract in the franchises.

[3] It is claimed on the part of the towns that there is a statutory provision (Railroad Law [Laws 1890, c. 565] § 98) which puts this obligation upon the defendant railway company. This is the provision of the statute requiring every street surface railroad company, so long as it shall operate its tracks in any street or highway, to keep in repair that portion of the street between its tracks and the rails of its tracks and two feet outside of its tracks. This provision of the statute refers to the surface of the street. Where a street upon which the railroad is operated is paved, the railroad company is required to pave between its rails and two feet upon each side. Where the street is not paved, it is required to keep the surface in repair. But the statute was not intended to require a railroad company to

construct a highway, or build its foundation, or build a bridge. It may construct its line over the bridge, and under this provision it is required to keep the floor of the bridge in a safe and proper condition for travel over it.

[4] My attention is called to that part of section 11 of the Railroad Law, which reads as follows:

"Every railroad corporation which shall build its road along, across or upon any stream, water course, street, highway, plank road or turnpike, which the route of its road shall intersect or touch, shall restore the stream or water course, street, highway, plank road and turnpike, thus intersected or touched, to its former state, or to such state as not to have unnecessarily impaired its usefulness, and any such highway, turnpike or plank road may be carried by it, under or over its track, as may be found most expedient."

Our courts have said that this section applies as well to street surface and electric roads as to steam roads, but the portion of the section referred to was intended to apply only to crossings or to places where the line of the road "intersects or touches" for a short distance the highway, not to the construction of a railroad which, practically throughout its entire length, is in the traveled part of the highway. A highway bridge, like the rest of the highway, must be constructed and maintained by the municipalities. They have a right, through proper officers, to grant franchises to street railroads to cross such bridge, and to protect the municipalities against extra expense by the terms of the franchise. The railroad company is bound by these terms when it accepts the franchise. If, because the railroad does cross the bridge, the company must make the bridge strong enough to bear its load and so maintain it, the next step in the argument is that the railroad company must provide the entire bridge; and the street railroad companies whose lines cross the Brooklyn Bridge and the Williamsburgh Bridge, for instance, would have imposed upon them an enormous obligation and one never contemplated. A street surface railroad which has constructed its line in the highway has not a route which "intersects or touches" the highway within the meaning of section 11. Section 98, above referred to, is the one provision of the statute applicable to such construction.

[5] There is no provision of the statute to which my attention has been called covering the issue here. We must, therefore, look to the franchises, which contain the following provisions:

"Second. The said company shall strengthen the stringers of said bridge to the amount necessary to carry safely the cars of the said company, and any other weight which may at the time be lawfully upon said bridge, and shall do the said work in a thorough and workmanlike manner, and without unnecessarily impeding the traffic on the said bridge.

"Third. The said company shall comply with all and every requirement of article 4 of the Railroad Law of the state of New York." (Article 4 contains the provisions as to street surface railroads.)

"Seventh. The said company shall at its own expense keep and maintain the westerly one-half of the roadway of said iron bridge. The material to be used and the time and manner in which repairs shall be made shall always be subject to the directions of the commissioner of highways."

There are some other conditions in the franchises to be complied with by the company. Whatever liability rests upon the railway com-

pany to pay the expenses for said repairs now in question rests upon it under these provisions. The provision No. 7 refers to the "roadway," and covers largely the same matter provided for by section 98 of the Railroad Law; and the only provision of article 4 of the Railroad Law which could affect the question here is said section 98. It is the second paragraph which must be construed. The towns which were bound to maintain the bridge imposed as a condition to the franchises that the railway company shall strengthen the stringers of the bridge to the amount necessary to carry safely the cars of the company and any other weight which may at the time be lawfully upon said bridge. They have not made any provision that the railway company shall pay any proportion of repairs, nor that they shall pay any proportion of the cost if the bridge is rebuilt. It is contended on the part of the towns that, when the railway company agreed to strengthen the stringers, it, in fact, agreed to strengthen the entire bridge. The argument is that to put heavy stringers under the part of the bridge used by the railroad tracks would not give necessary strength to the bridge, because the stringers are supported upon the cross-pieces, which, in turn, are suspended from the trusses and these again on the end piers, and that, therefore, to really strengthen the bridge, it would be necessary to strengthen both the cross-pieces and the trusses. If the position taken by the towns is correct, it would mean that, whenever it was necessary to rebuild the bridge, the railway company must substantially rebuild it, excepting possibly that part of the floor of the bridge which was not used by the railroad tracks, because the strength of the bridge depends primarily upon the trusses and the abutments.

[6] The term "stringers" has an accepted meaning to bridge men and civil engineers. Stowell and Sutermeister use the term interchangeably with "joists." It does not include cross-pieces, or braces. or suspension rods running from the cross-pieces to the trusses. So that, if the language used is considered according to its ordinary meaning, the railway company has agreed to strengthen the stringers of the bridge; that is, the longitudinal pieces running from end to end under the floor of the bridge. We have much assistance in determining the meaning given to this clause of the franchise by the conduct of the parties immediately after the franchise was granted. Prior to the granting of the franchises, the stringers were 8-inch steel beams, having a weight of $17\frac{1}{4}$ pounds to the foot and being 16 feet and 2 inches long. After receiving the franchises, the railway company removed the 8-inch stringers on the westerly side of the roadway of the bridge, where it was about to construct its line, and substituted 12-inch steel stringers, weighing 40 pounds to the foot. This change of the stringers was made after the consents were procured and the franchises granted; and there is no claim that at the time any protest was made. Apparently this change in the stringers was intended to be the change required by the franchises, and it is a fair presumption that the highway commissioners of the towns knew of the changes that were made at the time. This change

made by the railway company in 1896, as we understand it, is the only change that has been made up to the time of the repairs which are in question here.

[7] Although paragraph 7 of the franchises does not contain in words the provision that the railway company will continue to maintain the bridge with such stringers, it is conceded here that the obligation is a continuing one upon the railway company. The company concedes that it is obligated now to pay the cost of the stringers under their tracks. In my judgment this is the correct construction to put upon the franchises. It is in harmony with the acts of the parties immediately after the franchises were granted, and is in harmony with the ordinary meaning of the language used. The town authorities did not understand that, by granting the franchise to the railway company, they put upon the railway company the obligation of maintaining and restoring the bridge. They must have realized that the bridge was a part of the highway and must be maintained; and, if necessary, a new bridge must be built by the municipalities, whose duty it was to maintain the highway at this place. They must also have realized that they could impose such conditions, not in conflict with the law, as they saw fit, upon the granting of the franchises. That they did recognize these facts is shown by the fact that they did impose certain conditions on the company. It could not have been supposed by them that, when they provided that the railway company must strengthen the stringers of the bridge to the amount necessary to carry the cars and any other load thereon, they were putting upon it the obligation of maintaining and keeping the bridge in sufficient strength throughout. If such had been their intention, much simpler and plainer language could have been used. The stringers do not run as one piece of iron the entire length of the bridge, but are about 16 feet long and run from cross-piece to cross-piece. To replace the stringers with heavier and stronger stringers simply strengthens the bridge between the cross-pieces and under that part of the floor only supported by the heavier stringers. Putting heavier stringers, therefore, under the side of the bridge occupied by the railroad track would not strengthen the bridge under the easterly part of the roadway. The condition in the franchises is that the company shall strengthen the stringers of the bridge to the amount necessary to carry safely the cars of the company and any other weight which may at the time be lawfully upon the bridge, presumably upon another part of the bridge than that occupied by the railroad tracks. The railway company is obligated to put the stronger stringers not only under the portion of the bridge occupied by the tracks, but under the entire roadway of the bridge, whenever necessary; the roadway being one structure and sustained by cross-pieces running its entire width. The intent, therefore, was to put upon the defendant company a portion of the expense of maintaining the bridge, and that portion is that it must keep and maintain the stringers under the roadway its entire width of sufficient strength to carry the cars of the railway company and any other load properly upon the bridge. The cost of

such stringers in the repairs made is the part of the expense that must be paid by the railway company. The cost of the other parts of the bridge restored, under the stipulation, must be paid by the towns.

A decision and findings will be prepared accordingly.

Ordered accordingly.